FRANK CAVALLARO, PLAINTIFF-RESPONDENT, v. RCA-VICTOR COMPANY, INCORPORATED, DEFENDANT-APPELLANT.

Argued May 3, 1932—Decided October 17, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices BODINE and DONGES.

For the defendant-appellant, *French, Richards & Bradley* (*Floyd H. Bradley,* of counsel).

For the plaintiff-respondent, *Isadore H. Hermann.*

PER CURIAM.

The present action was brought under section 1 of the Workmen's Compensation act. 2 *Cum. Supp. Comp. Stat., p.* 3868. The plaintiff had been employed for about two months as an assembler in the cabinet department of the RCA-Victor Company factory in Camden. His task was to remove radio cabinets from seventy cabinet presses which passed in front of him on an endless conveyor. The rate of speed was about three presses per minute. The plaintiff testified that on the day he was hurt, he noticed that one of the presses was out of order and he marked it with a chalk mark. He said the spring was loose and the top of the press would not rise when an effort was made to actuate this spring. He further testified that the particular press had been out of order several

times during the week and he notified his superintendent, who had sent a repairman to fix it. The same trouble recurred, however. The plaintiff was hurt when he tried to pull off the cabinet from this press. The cabinet was stuck on the top of the press, and in forcing it out he struck his left knee. He stopped for a second, but was obliged to go on with his work. By seven o'clock in the evening he was not able to walk; his knee had started to swell and he was helped home. He used home remedies, and the next morning reported to the company doctor that he was unable to work. He left the doctor's office on crutches and continued to use hot Epsom salt compresses for four days under the doctor's order. Getting no better, he then went, being an ex-service man, to the Navy Yard hospital in Philadelphia, and an operation was performed. There was corroboration of his testimony in most particulars.

Appellant's first contention is that the machine could not stick nor could the spring become loose. It may be perhaps true that the spring could not become loose in the manner mentioned by the plaintiff, an ignorant man, because it was designed to lift the press when the lever was actuated. But it was possible that the press would stick and the spring could be out of sorts and not do the work it was designed to do, and it is possible that the jury so understood the testimony. There is no mechanical devise so far that will not get out of order.

Counsel for the appellant makes this contention: Can an employe operating under section 1 of the Workmen's Compensation act come into court and without any corroborative proof, testify to mechanical impossibilities and absurd actions of a hand press and without proving any defect in said press or that the defect could have been discovered by a reasonable inspection, make out a *prima facia* case of negligence? And can an employer overcome such proof by the introduction of plenary proof by mechanical experts, and others, to show that the press was of the latest and most approved type; that it was not within the mechanical possibilities for the platen to have stuck on top of the cabinet, so long as the nut

was on top of the spring; and that it was not within the mechanical possibilities of the press for the spring to have been loose, so long as the nut was on top of the spring?

It is perhaps enough to say that counsel overlooks the fact that there was testimony that this press stuck; that is the press part did not automatically rise when the lever was actuated, and that this condition was reported several times to the master, who made no effective repair. Possibly the plaintiff's language that the spring became loose is inartistic. He testified, however, that the spring did not work. He said, "well, that spring up there, that was loose and something don't come up. That piece of iron don't come up; the board and everything won't come up. *Q.* Is this the spring that you refer to? *A.* Yes, like that; I don't know that is the same one. *Q.* That is the spring that you mean when you said 'spring?' *A.* Yes. *Q.* Now, that is the press when it is shut, is that right (indicating)? *A.* Yes. *Q.* What do you do with the press when it comes to you that way? *A.* I open it and take off the form, the ticket, and then pull out the cabinet. *Q.* This press that you marked—did it come up like this? *A.* No.. *Q.* It did not? *A.* That remained stuck to the cabinet. *Q.* Now, when did you first notice that the press was sticking to the cabinet? *A.* That was for about a week that way. *Q.* Did you call this to the attention of any officials of the company? *A.* Well, I notified Garibaldi (his superintendent) and they come there and fix once in a while, but that was always the same way."

The function of the spring was shown to be to lift the press. The spring was actuated by a pull-back rod. The press was held in place by a cam. Obviously, if the spring was broken or out of place it would not lift the press. No matter how perfect a mechanism may be it will get out of order. A watch with a broken or misplaced mainspring will not run, and even defendant's witnesses so admitted. The plaintiff did not, of course, describe the defect as a mechanical engineer would do. But he proved a defect in the machine, reported to his boss and said that it was not effectively repaired. The trial judge could not take such a case from the jury because

under our system of law, the credit to attach to testimony is for the jury.

It occurs to us that there was no prejudice in excluding testimony that the presses in use were the best and most improved type manufactured, for the simple reason that there was proof that the press in question was out of order, and the defect so reported on several occasions had not been effectively remedied.

The request to charge was properly refused, since the theory on which the case was tried and evidence adduced was a failure to remedy a defective machine after the same had been reported out of order.

The judgment below is affirmed.